IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE E. HUNT, #A1002167 ) | CIVIL NO. 07-00087 JMS-LEK |
| ) | |
| Petitioner, ) | |
| ) | ORDER DISMISSING PETITION |
| vs. ) | AS TIME-BARRED |
| ) | |
| LANE BLAIR, Warden, et al., ) | |
| ) | |
| Respondents. ) | |
| _____ ) | |

### ORDER DISMISSING PETITION AS TIME-BARRED

On February 22, 2007, pro se Petitioner Wayne E. Hunt, a Hawaii prisoner incarcerated at Diamondback Correctional Facility ("DCF"), filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Respondent has filed a preliminary Answer to the Petition and Hunt has submitted his Reply. After consideration of the full record, this court DISMISSES the Petition with prejudice as time-barred.

### I. BACKGROUND

On September 17, 1996, a jury of the Circuit Court of the First Circuit, State of Hawaii ("Circuit Court") found Hunt guilty of Attempted Murder in the Second Degree, in violation of Hawaii Revised Statutes §§ 705-500 (1993), 707-701.5 (1993), and 706-656 (1993).  *See* Answer Ex. B.  On December 5,

1996, the Circuit Court sentenced Hunt to a term of life imprisonment with the possibility of parole. *Id.*

On March 5, 1998, in S.C. No. 20360, the Hawaii Supreme Court affirmed Hunt's conviction by Summary Disposition Order.[1] *Id.* Ex. G. Notice of judgment on appeal was entered on April 6, 1998. *Id.* Ex. H. The record does not reflect whether Hunt filed an application for certiorari with the United States Supreme Court.

Hunt filed a "Motion to Correct Illegal Sentence Pertaining to the Restitution Order," ("Rule 35 Motion") which was granted on November 15, 1999.[2] *See* Reply ¶ 11; Answer, Ex. I, exhibit to "Petition to Vacate, Set Aside or Correct Judgement or to Release Petitioner from Custody," at 7. The Hawaii

---

[1] In the body of the Petition, Hunt states that the Hawaii Intermediate Court of Appeals ("ICA") affirmed his conviction on September 11, 1997, and that he did not seek discretionary review of this decision with the Hawaii Supreme Court. Pet. 2 ¶ 9. This is contradicted, however, by the ICA's May 24, 2006 Summary Disposition Order, denying Hunt's post-conviction petition, which is attached to the Petition, as well as the publicly available records of Hunt's conviction. *See State v. Hunt*, 953 P.2d 958 (Haw. 1998) (unpub.) (entered March 5, 1998, "Affirmed.").

[2] It is unclear when Hunt, or his attorney, filed this motion. The record reflects a "Motion for Reconsideration of Sentence" was filed on March 3, 1997, presumably pursuant to Rule 35 of the Hawaii Rules of Penal Procedure ("HRPP"), during the pendency of Hunt's appeal. *See* Answer, Ex. U, 15. In his Petition, however, Hunt says that he filed a "Rule 35/Order to Vacate Restitution in the amount of $188,000" on August 10, 2004, that he claims was granted on November 15, 1999. Pet. 4 ¶ 11. In his Reply, however, Hunt states that he *filed* this motion in 1999. Reply ¶ 11. It appears that Hunt has confused the year that the motion was granted, with the year that he actually filed the motion, with the year that he filed his Rule 40 Petition.

Supreme Court set aside Hunt's order of restitution; in all other respects, however, the original sentence remained in effect. *See id.*

Almost five years later, on August 10, 2004, Hunt filed a post-conviction petition, pursuant to HRPP 40 ("Rule 40 petition"). Answer, Ex. I. All claims raised in this petition concerned alleged trial errors. On November 18, 2004, the Circuit Court denied the Petition without a hearing, finding that Hunt's claims were waived pursuant to HRPP 40(a)(3), and were also patently frivolous and without a trace of support in the record or in the other evidence that Hunt submitted. Resps.' Ex. K.

On May 24, 2006, the ICA upheld the Circuit Court's decision, finding that Hunt's claims were procedurally defaulted pursuant to HRPP 40(a)(3), and that Hunt failed to demonstrate that his trial counsel's performance was deficient pursuant to *State v. Wakisaka*, 102 Haw. 504, 514, 78 P.3d 317, 327 (2003). Answer, Ex. P. On June 19, 2006, the ICA denied Hunt's motion for reconsideration of this decision. Resps.' Ex. Q. Notice of judgment on appeal was entered on June 29, 2006. *Id.* Ex. T. On July 10, 2006, the Hawaii Supreme Court denied Hunt's application for certiorari. *Id.* Exs. R & S.

Hunt filed the present Petition approximately eight months later, on February 22, 2007. Hunt raises four grounds for relief: (1) the trial judge's

3

statements during motions in limine prejudiced the jury (Ground 1); (2) prosecutorial misconduct during closing argument (Ground 2); (3) the trial judge failed to instruct the jury as to the lesser included offense of Attempted Murder in the Second Degree (Ground 3); and (4) ineffective assistance of counsel (Ground 4). These are substantially the same claims that Hunt raised in his Rule 40 Petition.

## II. **LEGAL STANDARD**

Section 2244 provides in pertinent part:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1), (2).

Under certain conditions the statute of limitations may also be equitably tolled. *Pace v. DiGuglielmo*, 544 U.S. 408, 418-19 (2005); *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999). To qualify for equitable tolling, the petitioner "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace*, 544 U.S. at 418.

### III.  DISCUSSION

Under § 2244(d)(1), a one-year limitation period applies to applications for writs of habeas corpus, subject to certain tolling conditions. *See also* 28 U.S.C. § 2244(d)(2); *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (limiting statutory tolling under § 2244(d)(2) to state, not federal petitions); *Corjasso v. Ayers*, 278 F.3d 874, 877-79 (9th Cir. 2002) (holding that, on a showing of extraordinary circumstances, equitable tolling may apply to part or all of a federal petition); *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999).

Because Hunt did not file an application for certiorari with the United

States Supreme Court after the Hawaii Supreme Court affirmed his conviction, his conviction was final ninety days later, or on June 3, 1998. *See Clay v. United States*, 537 U.S. 522, 527 (2003). The statute of limitation began to run the next day, and, barring statutory or equitable tolling, expired one year later, on June 3, 1999. Hunt appears to argue that he is entitled to both statutory and equitable tolling. The court addresses each argument below.

### A. Statutory Tolling of the Limitations Period

Although this argument is not explicit, Hunt implies that, because the State has transferred him from prison to prison several times in the past seven years, there has been a state-created impediment to his filing a federal petition under 28 U.S.C. § 2244(d)(1)(B). *See* Reply 3. The court does not agree.

Hunt was transferred to Minnesota in October 1998, approximately six months after the Hawaii Supreme Court affirmed his conviction on direct appeal. Hunt states that he remained at this facility for two years, although he was without a law library or inmate law clerks for about one year of that time. He says that, after the law library opened, he "successfully filed his Post Conviction Relief on his Restitution." Reply ¶ 11. As noted above, this motion was granted on November 15, 1999.

Even accepting Hunt's argument, the statute could be tolled no more

than from June 3, 1998, the date that Hunt's conviction was final and the statute should have begun to run, until November 15, 1999, the date his Rule 35 Motion was granted.[3] *See* 28 U.S.C. § 2244(d)(2). Under this scenario, the statute began to run on November 16, 1999, and again barring statutory or equitable tolling, would have expired on November 15, 2000. Hunt admits that he had access to a law library and to law clerks after one year in Minnesota, or by November 1999.

Hunt was then transferred to Watonga, Oklahoma in 2001. He admits that there was a law library and law clerks available to him there, but states that "it took time for Petitioner to acclimatize to this facility's programs, education, and employment." Reply ¶ 12. It apparently took him two years to acclimate, as he admits that he only began researching his claims for further post-conviction relief in 2003. He then filed his Rule 40 Petition in August 2004.

This time frame cannot support a finding that there was any state-created impediment after, at the latest, November 1999, when Hunt admits he had access to a law library and law clerks in Minnesota. Although Hunt remained in Minnesota after November 1999 with full access to a law library and law clerks,

---

[3] There is no indication whether Hunt sought certiorari from the Supreme Court after this decision, although this is unlikely since the motion was granted. In any event, Hunt is not entitled to tolling of the statute during the pendency of a petition for certiorari after the denial of a state post-conviction petition. *Lawrence v. Florida*, ___U.S. ___, 127 S. Ct. 1079, 1083 (2007) ("Read naturally, the text of the statute must mean that the statute of limitations is tolled only while state courts review the application.")

he fails to explain how the state impeded his ability to file a federal habeas petition after that date. Nor can Hunt's transfer to Oklahoma satisfy this inquiry because Hunt admits that, once transferred there in 2001, he again had access to both a law library and law clerks, and, in 2004, was able to file the Rule 40 Petition.

Further, an assertion that the statute of limitations was delayed by a state-created impediment requires a showing of a due process violation. *Lott v. Mueller*, 304 F.3d 918, 925 (9th Cir. 2002). Hunt neither argues there was any kind of due process violation, nor does the record support such a claim. Hunt is therefore not entitled to statutory tolling after November 15, 1999, under § 1915(d)(1)(A) or (B), despite his transfers out-of-state and his temporary lack of access to the law library in Minnesota.

Nor does Hunt assert a newly recognized constitutional right that is retroactively applicable to cases on collateral review, entitling him to tolling under § 2244(d)(1)(C). Likewise, Hunt fails to present evidence or argue that he has newly discovered evidence supporting statutory tolling of this habeas petition under § 2244(d)(1)(D). Hunt is, therefore, not entitled to statutory tolling of the limitation period.

**B.**     **Equitable Tolling**

"[T]he threshold necessary to trigger equitable tolling under [the Anti-Terrorism and Effective Death Penalty Act ("AEDPA")], is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (internal quotation marks and citation omitted). This high bar is necessary to effectuate the "AEDPA's statutory purpose of encouraging prompt filings in federal court in order to protect the federal system from being forced to hear stale claims." *Guillory v. Roe*, 329 F.3d 1015, 1018 (9th Cir. 2003) (internal quotation marks and citation omitted). Equitable tolling determinations are "highly fact-dependent." *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (per curiam); *accord Lott v. Mueller*, 304 F.3d 918, 923 (9th Cir. 2002) (observing that equitable tolling determinations "turn[ ] on an examination of detailed facts"). Additionally, "[t]he prisoner must show that the 'extraordinary circumstances' were the cause of his untimeliness." *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003)  (citations omitted); *Roy v. Lampert*, 465 F.3d 964, 969 (9th Cir. 2006).

"As a discretionary doctrine that turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rulings." *Spitsyn*, 345 F.3d at 801 (*quoting Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir.

1999)). Accordingly, "[a] habeas petitioner . . . should receive an evidentiary hearing when he makes 'a good faith *allegation that would, if true*, entitle him to equitable tolling.'" *Roy*, 465 F.3d at 969 (*quoting Laws v. LaMarque*, 351 F.3d 919, 919 (9th Cir. 2003) (emphasis in original)).

Hunt argues that he is entitled to equitable tolling of the statute, based on his attorney's failure to promptly notify him that his appeal was concluded, and apparently, on his claim that he has had dyslexia since he was a child. *See* Reply ¶ 13.

### 1. *Attorney Mistake or Negligence*

An attorney's mistake or negligence will not necessarily support equitable tolling of the AEDPA's statute of limitations period. *Lawrence v. Florida*, ___U.S. ___, 127 S. Ct. 1079, 1085 (2007); *Miranda v. Castro*, 292 F.3d 1063, 1067 (9th Cir. 2002). Only when "an attorney's misconduct is 'sufficiently egregious,' [will it] constitute an 'extraordinary circumstance' warranting equitable tolling of AEDPA's statute of limitations." *Spitsyn v. Moore*, 345 F.3d 796, 800 (9th Cir. 2003) (*quoting Ford v. Hubbard*, 330 F.3d 1086, 1106 (9th Cir. 2003), *overruled on other grounds*, *Pliler v. Ford*, 542 U.S. 225 (2004)).

Hunt claims that he did not receive immediate notice from his appellate counsel that his conviction had been affirmed. Hunt says that his

attorney's March 18, 1998 letter informing him that his appeal was concluded, along with the relevant state court documents was sent to his mother and not directly to him at Halawa Correctional Facility ("Halawa"), where he was then incarcerated. Hunt believes this is significant evidence of his attorney's failure to "perform his legal duties as Petitioner's legal counsel and in accordance to law." Reply ¶ 6. Hunt says that he only received the letter and other documents after he complained to his mother about his attorney's failure to notify him, and she forwarded them to him. Hunt concedes, however, that his attorney sent him another letter approximately three months later, dated June 29, 1998, acknowledging Hunt's request for information and apparent failure to receive the earlier letter, and informing him in detail about the status of his case.[4] *See* Reply Ex. C. Hunt provides a copy of this letter with his Reply.

        First, Hunt's attorney's alleged failure to send the documents directly to Hunt at Halawa constitutes, at most, negligence. Such negligence is insufficient to warrant equitable tolling. *See Miranda*, 292 F.3d at 1068 (holding that an attorney's miscalculation of the statute of limitations deadline, and other

---

[4] In this letter, Hunt's attorney informed him that his conviction had been affirmed, that he may seek review of this decision from the United States Supreme Court, although his chances of being granted certiorari were remote, that he could also file a post-conviction petition in the circuit court, and that, now that the appeal was concluded, he was no longer representing Hunt. Reply Ex. C. Hunt's attorney also implied that he did, in fact, send the first letter directly to Hunt, but that, perhaps, Hunt "did not understand it or just did not like its contents." *Id.*

negligence in general, did not support equitable tolling of the statute); *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001) (same).  This is particularly true here, where Hunt's attorney had also sent the material to Hunt's mother, who forwarded it to Hunt, and then wrote a second letter to Hunt approximately three months later.  Under these circumstances, where Hunt's attorney promptly rectified his alleged negligence, and where Hunt still had almost a full year left to file either a federal habeas petition or a state post-conviction petition to toll the federal statute, the attorney's alleged misconduct was not sufficiently egregious to warrant equitable tolling.

Second, Hunt clearly admits that he was aware that his conviction had been affirmed: (1) when his mother forwarded the documents to him at Halawa; (2) when his attorney sent the second letter in June 1998; and (3) no later than October 1998, when he was transferred to Minnesota.  *See* Reply ¶ 10 ("Shortly after receiving Baker's correspondence (Exhibit 'C'), Petitioner was re-located to Minnesota prison in 10/98.").  Hunt therefore knew that his appeal was terminated and his conviction was final for approximately eight years before he filed the present Petition.  Even if this court equitably tolled the statute between March 1998, when the Hawaii Supreme Court affirmed Hunt's conviction, and June 1998, when he finally received that information directly from his attorney, Hunt

provides no explanation why he then waited almost nine *more* years before filing the present federal petition. Hunt fails to show that he diligently pursued his rights in the federal court once he knew that his conviction was affirmed. *See Pace*, 544 U.S. at 419.

### 2. *Hunt's Ignorance of His Right to File a Federal Habeas Petition*

Hunt also argues that the statute should be equitably tolled because, although his attorney informed him that he could seek certiorari with the United States Supreme Court and that he could file a state court post-conviction petition under Rule 40, he failed to tell Hunt that he could also file a federal habeas petition and that he must do so within one year of his conviction. *See* Reply ¶ 7. This argument is unpersuasive.

Hunt has no legal right to counsel to file a federal habeas petition. "[T]he right to appointed counsel extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Knaubert v. Goldsmith,* 791 F.2d 722, 728 (9th Cir. 1986). Where there is no constitutional right to counsel, there can be no constitutional claim for ineffective assistance of counsel. *See Coleman v. Thompson*, 501 U.S. 722, 757 (1991). It follows from this, that there is no constitutionally deficient assistance of counsel for Hunt's attorney's failure to inform him, at the conclusion of direct appeal, that he may file

13

a federal habeas petition and that he must do so within one year. *See Bonin v. Calderon*, 77 F.3d 1155, 1159-60 (9th Cir. 1996) (claim of ineffective assistance of counsel in state habeas proceedings does not present violation of Sixth Amendment right to counsel or Fourteenth Amendment right to due process where no constitutional right to counsel in such proceedings).

Moreover, Hunt alleges no facts from which it can be inferred that his attorney agreed to assist him with preparing and/or filing either a state post-conviction challenge or federal habeas corpus petition. *Cf. Spitsyn*, 345 F.3d at 800-01 (equitable tolling appropriate where attorney was retained to file and prepare petition, failed to do so, and disregarded requests to return files pertaining to petitioner's case until well after the date the petition was due). In fact, Hunt's attorney explicitly told Hunt that his representation ended with the final state court appellate disposition of Hunt's case and that he was unable to represent him in any other capacity due to prior commitments and Hunt's expressed desire that he withdraw from representing him. Reply Ex. C.

While it may be sound practice for a state appellate attorney to advise his clients about the existence of the statute of limitations in § 2244(d), Hunt cites no authority, and this court is unaware of any, that imposes a duty on appellate counsel, particularly when that appointment is terminated, to do so. As discussed

above, equitable tolling is simply not available where an untimely filing allegedly was caused by poor legal advice.  For these reasons, Hunt is not entitled to equitable tolling of the statute of limitations because his attorney failed to inform him that he may file a federal habeas petition and the time limits governing such a filing.

Nor does Hunt's own ignorance of his right to file a federal habeas petition, and of the statute of limitations governing such petitions, constitute an extraordinary circumstance warranting equitable tolling.  *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006).

Additionally, the fact that Hunt finally filed a Rule 40 Petition in 2004, which Hunt suggests should toll the statute, is unavailing to Hunt.  When, as here, a state post-conviction petition is filed *after* the statute of limitation has expired, the statute of limitation is not retroactively tolled.  *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (holding that "section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."); *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001) (stating that state post-conviction relief action, filed after the statute of limitations had expired, "did not cause the statute to begin running anew when the state court denied the motion.").

Hunt's attorney's alleged three-month failure to notify him that his conviction was affirmed and that his appeal was concluded does not provide the extraordinary circumstances necessary for equitable tolling of the statute for the entire period here.  Further, in this case, with this record, it is clear that an evidentiary hearing is not warranted on this issue.

### 3. *Hunt's Alleged Dyslexia*

Hunt also alleges, without evidentiary support, that he has been dyslexic since he was a child, and that this disability should equitably toll the statute of limitations for him.  This argument is equally unpersuasive.

First, although no circuit court of appeals has entered a published opinion on this issue, several courts have concluded that dyslexia is not an "extraordinary circumstance" preventing a prisoner from timely pursuing a federal habeas petition.  *See Springer v. Benik*, 2004 WL 759563 *3 (W.D. Wis. 2004), *aff'd.*, 134 Fed. Appx. 961, 963 (7th Cir. 2005); *Pogue v. Crosby*, 2006 WL 213866 *3 (M.D. Fla. 2006)*; Hamilton v. Benik*, 2004 WL 1246054, *3 (W.D. Wis. 2004) ("Although petitioner points out that he is impaired by dyslexia, a learning disability and a lack of legal knowledge and has had to rely on the help of other inmates to pursue his claims, none of those allegations is sufficient to warrant equitable tolling." ).  This court agrees with those holdings.

Second, if Hunt is attempting to equate his alleged dyslexia with a mental impairment, he also fails.  Even presuming that dyslexia constitutes a mental illness, rather than or in addition to a learning disability, Hunt fails to make the necessary showing that this alleged condition rendered him incapable of filing a federal habeas petition before the statute expired.  *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996); *Springer*, 2004 WL 759563 *3 (holding that, to be entitled to equitable tolling for a mental illness or disability, a petitioner must show that he was incapable of preparing and filing a federal habeas petition or post-conviction motion any earlier than he did); *Ross v. Hickman*, 2001 WL 940911 (N.D. Cal. 2001) (same).  There is no evidence before the court showing that Hunt was incapacitated by any mental illness such that he was incapable of bringing a timely federal petition.

Third, and most importantly, Hunt states in his Reply that once the law library opened in Minnesota, he "successfully filed his Post Conviction Relief on his Restitution."  Reply 3 ¶ 11.  While it is unclear whether Hunt had help from a prison law clerk, he still fails to explain why he could file this pleading yet was unable to file a timely federal habeas petition.  Hunt admits that he had access to prison law clerks once he transferred to Oklahoma in 2001.  Again, he doesn't explain why he was unable to file a federal petition with their help, or how his

17

dyslexia prevented him from doing so, other than claiming that "it took time for [him] to acclimatize" to the new prison.  Reply 3 ¶ 12.  Moreover, Hunt does not explain how he was able to file his Rule 40 Petition in 2004, and the present Petition in 2007, again, despite his dyslexia.

Fourth, it is the Petitioner's burden to prove that he is entitled to equitable tolling because "some extraordinary circumstance stood in his way." *Pace*, 544 U.S. at 418.  Other than his own self-serving statement that he suffers from dyslexia, and that his mother can verify this, Hunt has provided nothing to support this claim.  Hunt is not entitled to either an evidentiary hearing on this claim, nor equitable tolling of the statute based on this claim.

### IV.  <u>CONCLUSION</u>

This court finds that the Petition is time-barred, and that Hunt is not entitled to equitable tolling of the statute.  Accordingly, the Petition is DISMISSED with prejudice as time-barred.

IT IS SO ORDERED.

DATED:   Honolulu, Hawaii, July 3, 2007.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Hunt v. Blair, et al.*; Civ. No. 07-00087 JMS-LEK; Order Dismissing Petition as Time-barred; dmp/habeas 07/ Hunt 07-89 (SOL)